```
                UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA          :
                                  :
                                  :
          v.                      :    Case No. 2:08-cr-103
                                  :
ROBERT GLEN HARRISON,             :
                                  :
          Defendant.              :

**MEMORANDUM OPINION and ORDER**

The Defendant, Robert Glen Harrison, has been charged with being a person required to register under the Sex Offender Registration and Notification Act ("SORNA") who traveled in interstate commerce and knowingly failed to update his registration, in violation of 18 U.S.C. § 2252(a). Harrison moved to dismiss the indictment, challenging the constitutionality of SORNA as a violation of the Commerce Clause and of his due process rights under the United States Constitution. The Court heard argument on February 25, 2009.

**I.   Factual Background**

On October 26, 1998, Harrison was convicted in Orange County, Vermont, of sexual assault of a minor under the age of sixteen, in violation of Vt. Stat. Ann. tit. 13, § 3252(a)(3). He received a suspended sentence of one to five years, and was placed on probation. On November 8, 1999, Harrison violated his probation and was sentenced to serve out his term of incarceration.

As a result of his conviction Harrison was required to

report to the Vermont Department of Public Safety's sex offender registry.  *See id.* § 5401-07.  Harrison received written notification of his obligation to register on three occasions prior to his release from incarceration, on March 22, 2002, September 26, 2002, and February 11, 2003.  Each written notification advised Harrison that if he intended to move to another state he must register with the Sex Offender Registry of the new state within three days of moving.  *See id.* § 5407(a)(3), (b).  The notice also advised that failure to comply with any of the requirements subjected him to arrest, fine, and or imprisonment.  Harrison acknowledged his receipt of the notification and his understanding of the requirements.

On March 5, 2003, Harrison was released.  On March 14, 2008 Harrison verified his address with the Vermont registry as 48 Elm Hill, Apt. 2, in Springfield, Vermont.  It is alleged that in late May, 2008 the Vermont sex offender registry received information from law enforcement officials in Florida that Harrison was living in Florida and had provided them with an address of 3835 Bravo Road in Port Charlotte, Florida.  Harrison allegedly did not notify the registries of either Florida or Vermont until August 2008, when he registered in Florida.

On August 28, 2008 a grand jury indicted Harrison on one count of failing to update his sex offender registration, in violation of 18 U.S.C. § 2250(a).  On September 3, 2008, Harrison

2

was arrested in Florida.

**II. Statutory Framework**

SORNA was enacted in July 2006 as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006). SORNA's purpose is to "protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. "[T]he statute was designed to 'track the interstate movement of sex offenders.'" *United States v. Ambert*, ___ F.3d ___, ___, No. 08-13139, 2009 WL 564677, at *2 (11th Cir. Mar. 6, 2009) (quoting *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009)).

Under SORNA, a sex offender must "register, and keep the registration current, in each jurisdiction where the offender resides, where the employee is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). Not later than three business days after a change of residence, employment or student status, a sex offender must appear in person in the old or new jurisdiction to provide updated information, which must be immediately transmitted to all other jurisdictions where the offender is required to register. *Id.* § 16913(c).

SORNA also makes it a federal crime to travel in interstate commerce and knowingly fail to register or update a registration

3

required by SORNA, punishable by up to ten years in prison. 18 U.S.C. § 2250(a).

**III. Commerce Clause Challenge**

Harrison argues that SORNA violates the Commerce Clause of the United States Constitution by failing to meet any standard by which Congress may permissibly regulate commerce. The federal government's enumerated powers under the Constitution include the power to "regulate Commerce . . . among the several States, and to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Power[]." U.S. Const., art. I, § 8, cl. 3, 18. Although the power to regulate commerce "may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution," *Gibbons v. Ogden*, 9 Wheat. 1, 189-90 (1824), commerce that does not extend to or affect other states is outside the reach of the Commerce Clause. *Id.* at 194-95; *accord United States v. Lopez*, 514 U.S. 549, 553 (1995); *see also NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937) (The scope of the power to regulate commerce "may not be extended so as to embrace effects upon interstate commerce so indirect and remote . . . [as to] effectually obliterate the distinction between what is national and what is local.").

In *Lopez*, the United States Supreme Court identified three broad categories of activity that Congress may regulate under its

commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce." *Lopez*, 514 U.S. at 558-59.

The Eighth, Tenth and Eleventh Circuit Courts of Appeal have upheld SORNA as a valid regulation both of the use of channels of interstate commerce and persons or things or instrumentalities in interstate commerce. *Ambert*, 2009 WL 564677, at *8; *United States v. Lawrance*, 548 F.3d 1329, 1337 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008). This Court agrees with the reasoning presented there as well as in several district court decisions that have addressed the same issue. Congress may regulate the use of interstate commerce to prevent the spread of harm to the people of other states from the state of origin. *See, e.g.*, *Lawrance*, 548 F.3d at 1337 (citing *Brooks v. United States*, 267 U.S. 432, 436-37 (1925)); *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008); *see also United States v. Hardeman*, ___ F. Supp. 2d ___, ___, No. CR 08-0847 WHA, 2009 WL 188035, at *4-6 (N.D. Cal. Jan. 23, 2009) (rejecting challenges to § 16913 and § 2250(a)); *United States v. Vardaro*, 575 F. Supp. 2d 1179, 1185-86 (D. Mont. 2008) (collecting cases); *United States v. Shenandoah*, 572 F. Supp. 2d 566, 575-76 (M.D.

Pa. 2008) (same).

Harrison argues nevertheless that SORNA does not regulate a channel or instrumentality of interstate commerce because the statute does not demand that a sex offender register whenever the sex offender travels, but regulates "purposeful activity (living, working, receiving an education) within a receiving state that the SORNA regulates--none of which, without more, constitutes an immoral or injurious purpose." (Mot. to Dismiss 6-7.) This argument sidesteps a critical purpose of SORNA, which is to "track the interstate movement of sex offenders." *Howell*, 552 F.3d at 716. As the Court in *Howell* stated: "The language of § 16913 evidences Congress's focus on monitoring this interstate movement of sex offenders by emphasizing the movement of sex offenders from jurisdiction to jurisdiction. The state requires sex offenders to 'register, and keep the registration current, in *each jurisdiction*' where the offender lives, works, or goes to school." *Id.* (emphasis in *Howell*).[1] Likewise, SORNA's declaration of purpose at § 16901 "reflects the act's interstate focus" by establishing a comprehensive national system for registration. *Id.* *Howell* also detailed the concern over

---

[1] Congress limited the federal criminal enforcement of this requirement however to those who knowingly fail to register or to update a registration when they have traveled in interstate commerce. 18 U.S.C. § 2250(a). A wholly intrastate violation of § 16913 may only be prosecuted by a state. *See* 42 U.S.C. § 16913(e).

interstate movement of sex offenders that permeated SORNA's legislative history. *Id.* at 716-17. "Based upon the language, statutory scheme, declaration of purpose, and legislative history of SORNA," the *Howell* Court concluded that "SORNA was intended to regulate the interstate movement of sex offenders." *Id.* at 717; *accord Ambert*, 2009 WL 564677 at *9.

Harrison also argues that SORNA is not a valid exercise of Congressional power under *Lopez*'s third category, the regulation of activities having a substantial relation to interstate commerce.[2] Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). A regulation will be upheld if a rational basis exists for concluding that the regulated activity substantially affects interstate commerce. *Id.* at 22. To determine if an activity has substantial effects on interstate commerce, courts consider four factors: 1) whether the regulated activity is commercial or economic in nature; 2) whether the statute contains an express jurisdictional element that limits

---

[2] For this part of his argument, Harrison relies on the analysis in *United States v. Powers*, 544 F. Supp. 2d 1331 (M.D. Fla. 2008). The Eleventh Circuit recently vacated *Powers*, holding that both SORNA's registration requirement and failure-to-register offense were valid exercises of the Commerce Clause power, citing *Ambert*, 2009 WL 564677. *United States v. Powers*, ___ F.3d ___, ___, No. 08-12764, 2009 WL 775566, at *1 (11th Cir. Mar. 26, 2009) (per curiam).

7

its reach; 3) whether the statute is supported by legislative findings documenting the interstate character of the activity; and 4) whether the relationship between the regulated activity and a substantial effect of interstate commerce is attenuated. *United States v. Morrison*, 529 U.S. 598, 610-13 (2000); *United States v. Holston*, 343 F.3d 83, 88-90 (2d Cir. 2003). As persuasively discussed in *United States v. Guzman*, 582 F. Supp. 2d 305, 310-12 (N.D.N.Y. 2008), the Government's rationale for upholding SORNA as a regulation of activity that substantially affects interstate commerce is not tenable. *See also United States v. Hall*, 577 F. Supp.2d 610, 621-22 (N.D.N.Y. 2008); *United States v. Waybright*, 561 F. Supp. 2d 1154, 1163-65 (D. Mont. 2008). Because this Court finds that SORNA is a valid regulation under *Lopez*'s first two categories, however, Harrison's argument that SORNA fails under the third category does not succeed in invalidating the statute.

Finally, Harrison argues that even if § 2250(a) is a valid exercise of Congress's Commerce Clause power, 42 U.S.C. § 16913 is not. As noted above, § 16913 does not appear to regulate an activity that substantially affects interstate commerce, *Lopez*'s third category. As the *Howell* decision among others demonstrates, however, § 16913 "when analyzed in relation to the purpose of SORNA . . . help[s] establish a system by which the government can monitor the location and travels of sex offenders

. . . [and] is a reasonable means to track those offenders if they move across state lines." *Howell*, 552 F.3d at 717. This is a valid exercise of congressional power "'[t]o make all Laws which shall be necessary and proper' for the accomplishment of its commerce clause power." *Id.* at 714; *accord Ambert*, 20009 WL 564677 at *9.

"'Due respect for the decisions of a coordinate branch of Government demands that [a court] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds.'" *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 395 (2d Cir. 2008) (quoting *United States v. Morrison*, 529 U.S. 598, 607 (2000)). Harrison has not made that plain showing.

## IV. Due Process Challenge

Harrison argues that he lacked adequate notice of his obligation to register under SORNA, because Vermont and Florida have not implemented SORNA's requirements. Harrison does not argue that he was unaware of his obligation to register in Vermont as a sex offender, nor of his obligation to notify the Department of Public Safety's Criminal Information Center if he intended to move to another state, nor of his obligation to register with the sex offender registry of the new state within three days of his arrival, given that he acknowledged in writing his receipt of this information on three separate occasions.

He argues narrowly that he lacked notice that failure to adhere to these requirements would subject him to a substantial federal penalty under SORNA. Citing to *United States v. Lanier*, 520 U.S. 259, 265 (1997), he suggests that he lacked "fair warning." That he was aware of his obligation but unaware of the precise penalty for a failure to perform it, is not the lack of fair warning described in *Lanier*, which articulated the principle as no one may "'be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Id.* (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1931)). There is no question that Harrison understood that his failure to update his sex offender registration upon moving to another state was proscribed conduct that could result in substantial criminal penalties.[3] *See Hinckley*, 550 F.3d at 938-39 (rejecting due process claim based on ignorance of the greater penalties SORNA carried).

Based on these facts, no deprivation of due process occurred.

## Conclusion

Harrison's motion to dismiss his indictment is hereby **denied**.

---

[3] At the time a first offense for failure to comply was a felony under Vermont law, carrying a potential two year term of incarceration. Vt. Stat. Ann. tit. 13, § 5409.

Dated at Burlington, Vermont this 10th day of April, 2009.

                                      <u>/s/ William K. Sessions III</u>
                                      William K. Sessions III
                                      Chief Judge